Well, you get the tie award for this morning. My associate attorney gave it to me because he couldn't wear it. He's too OCD to wear a non. It's fine. And everybody has complimented me on it ever since. We'll see if it's my lucky tie. Good morning, Your Honors. My name is Ben Wiesener. I'm here for the petitioner, Ilona King. Your Honors, Alta Morano v. Gonzales controls the outcome here. Ilona King was present at the scene of a crime. Which case? I'm sorry? It's in our opening brief, Alta Morano v. Gonzales. All right. But wasn't the difference, the main difference there that in that case the guy didn't own the car? He was just driving in it? As I understand it, if she, because it was her house, if she knew that he was manufacturing meth there, that is enough. Correct. But she didn't know. But that wasn't true in the other case because it wasn't her car. But Alta Morano knew there was the guy in the trunk. It wasn't her car. Correct. So simply knowing and driving in the car wasn't the crime. But here, knowing was enough because it was her house. The knowing possession of chemicals is the crime. Knowing that he was manufacturing. But there's no evidence that that's what happened. There's no evidence that she knew. But I'm just saying that's why the other case is not very helpful. Well, in my opinion, it is helpful because both people were present at the scene of the crime. Neither one of them gave any knowing encouragement or profit. If Alta Morano had been for her car, would that have made a difference? If she had been driving? And it was her and she owned it. If she had been driving and she owned it. Yes, it would be different. I don't think Alta. That's the analogy here. Well, true. But then Alta Morano wouldn't help us. But, in fact, it does. And the other cases regarding reason to believe also help us because we also, in these types of cases, we always look at all the attending facts and circumstances. So you believe that she was not aware of what was going on in this 1,300-square-foot house that she shared with her husband and brother. Is that right? Yes. Do we have to believe the testimony of her brother and husband that they only manufactured meth at night in a shed outside the house? Because that's yes, we do. Do we have to accept that? Yes, we do because that's. Isn't that flatly contradicted by what the law enforcement agents found when they entered the house? No, it is not, Your Honor. The law enforcement. The house looked like Walter White's lab, didn't it? One of the things that. There were computers and containers with tubes flowing off of them. And your client, who's an admitted meth addict and has admitted possessing precursor methamphetamine chemicals, said she didn't know? Your Honor, yes. That's correct. She didn't know. What was found actually in the house, if you go to, let's see here, 612, 613, 616 of the AR, was one gallon jug and some stained coffee filters in the house. Everything else was found out back. So that's the only stuff that was found in the house. And you also have to look at the fact that twice, both in, well, actually four times, in King's testimony and Pollack's testimony and in their statements to the police officers, all they told Sismolich, get rid of it. We saw this stuff. We didn't like it in the house. Get rid of it. And he did. It was gone. Under our standard of review, to say hypothetically that there are five facts that support a lack of knowledge, but that the IJ correctly pointed to five facts which support the idea that she had knowledge, what are we obligated to do? Dismiss the case. But there aren't five facts that support the IJ's finding, Your Honor. Well, 1,300-square-foot house, how many rooms? I don't know. I don't know. This room right here is probably about 600 square feet. So a house about twice the size of the room that we're in with her brother and her husband. And she uses methamphetamine. In fact, she admitted she's addicted to it. And she's there with her children, right? Yes. And she has, she's admitted she has precursor chemicals. And the law enforcement agents found significant evidence, or at least evidence, of manufacture going on when they entered the 1,300-square-foot house. Have I hit five yet? The evidence. Yes or no? No. No, Your Honor. I respectfully disagree. Because when law enforcement entered, they found evidence that a lab maybe had existed, but if you'll notice, they required no breathing apparatuses and they found no actual meth. Just evidence that somebody had at one point tried to cook meth. Okay? And I think that's a significant difference, Your Honor, because all the testimony was that they, Sysmolich, tried. The whole idea was to keep King from knowing about it. Well, in fact, the I.J. credited the husband who said that. Correct. Found fully credible. Which is a little inconsistent with his ultimate conclusion. It is. And that's why we're asking that the Court find that the I.J.'s adverse credibility of the decision is not supported by substantial evidence either. Doesn't the evidence show that she had a suspicion that something was going on? Yes. And she told her brother. Why isn't that enough? Because suspicion isn't knowledge. It's not the same thing, Your Honor. And she told her brother, whatever you're doing, stop it. Is willful blindness enough? It doesn't. I don't think so, Your Honor. Even if it weren't, excuse me, even if willful blindness was enough, she was not willfully blind because she. What was she telling her brother to knock off? To get rid of these things that were suspicious in the house. I believe motor oil and the plastic tube. Well, it could have been that she just said get it out of the house. That doesn't mean she didn't know he was making it in the back of the shed. And we can split hairs on that one, Your Honor. I agree. Did the BIA decide this on the basis of willful blindness? The BIA adopted and affirmed the judgment. Or the IJ. Did the IJ decide it on the basis of willful blindness? Yes. That's what he says right there in his order. And she was not willfully blind. Both the IJ and the BIA relied quite heavily on her plea to position of predecessor chemicals. Yes. Right? What does that crime consist of in Arizona? Do you know? Did she have to know anything? In Arizona, if she possessed the predecessor criminals' chemicals and knew that ‑‑ I mean, if she had a suit of Fedrin and knew she did, is that the crime? Yes. That's enough. So she doesn't have to know that it's being used for anything. That is absolutely correct, Your Honor. And I know that you're usually giving us the hypotheticals, but I'd like to give one to the Court. Are we standing here having the same argument if Ms. King pled guilty to possession of paraphernalia only? Given the same facts, which would support a conviction for paraphernalia, we have ‑‑ both of them are crimes of strict liability. They don't require any knowledge of how ‑‑ of what else is going on around there. It's just strict liability. You got it, you're guilty. But for some reason, we have a real problem with this statute, and we have a real problem with the evidence in the police report. And I agree, it's horrible. This ‑‑ what was going on in this house is deplorable. But, again, every reason to believe case asks what happens afterwards. It doesn't stop with the initial arrest. It doesn't stop with the initial questioning. It asks, well, what happened? What are the attendant facts and circumstances? When the police entered the house, did they, in fact, when they saw what they saw, didn't they stop and ask for a HAZMAT team to come in? Was it a HAZMAT team or just simply a specialist? I think it was simply a specialist from the department who went in and did a preliminary investigation and said, you know, it's okay, everybody, you know, investigators, you can come in and process the scene. No breathing apparatus are necessary. And that's in 613, AR 613. So I would agree that this is a bad arrest. This is a bad police report. And the standard here is only reasonable belief. So if you take all these facts, why doesn't it add up to reasonable belief? Reasonable belief of what, Your Honor? It's reasonable belief of knowingly colluding. Knowing colluding. And what is this standard? Is it more than probable cause, less than probable cause? And why is it sufficient to deport somebody to have, if you think they might have done something, even if they didn't do it? Well, the statute, the reasonable belief statute was designed to give particularly Customs and Border Patrol officers the flexibility to expel somebody or deny admission if they have reason to believe that one of these things is going on. And so you don't, that's why you don't need a conviction. And so the whole idea was, you know, let's give them the flexibility to handle what is it. Is reasonable belief probable cause? What is it? This Court's precedent holds that it's akin to the probable cause standard. And that's whether. Certainly this evidence would be enough to get to a jury, no? I'm sorry? Would this evidence be enough to get to a jury? On which count? On the? On the count that she was deported on. Well, of course. What? Of course. I would agree.  So is that the end of the story? That's what I'm trying to understand. No, it's not the end of the story. Why? Because, as I've said, you have, we have to look at what happens afterwards. After what? After the arrest, after the conviction. I know, but I'm just asking if the whole thing would be enough. In other words, could you get to a jury on the crime of manufacturing? Knowingly manufacturing. Yeah, knowingly manufacturing or knowingly aiding and abetting manufacturing on this record. I would hope that as a defense lawyer I could keep that away from a jury. And that's because of all the statements to the police, Your Honor. But you think that's the standard essentially? Is it enough to get to a jury? My not being a pure criminal defense attorney, I would hesitate to answer that question, Your Honor. What I would say is that this Court has said that it is akin to probable cause. So therefore, the question is whether reasonable, substantial and probative evidence supports the conclusion. The problem is the mens rea, the knowing collusion, knowing assistance, knowing aiding or abetting, and there's simply no evidence of that. We had, the judge had to cherry-pick from the record. Did the police find any manufacturing in the house? No, not that I know more of. So did they find any in the shed? I'd have to double-check the police report. But they didn't, again, I don't believe they found it. Well, they didn't prosecute anybody for manufacturing. Mr. Sysmulich went to prison for a year related to this crime. But not for that. He was also convicted of possession, as I understand it. Correct, Your Honor. Possession of precursor chemicals. Correct, Your Honor. And so he went to prison for this crime. But not for manufacturing, right? I think he did, Your Honor. I'd have to check on that. I thought they were all convicted for possession. You know, and if the Court thinks that that might be, you know, important in the decision, I will certainly. Well, it only tells you something about how strong they thought the evidence was. Well, I think the evidence was strong enough to prosecute him to the maximum extent of the law. He went to prison for it for at least a year, maybe longer. I know, but the question is what did he go to prison for. Right. So I'd like to, unless there's anything else, I'll reserve some time. That's fine. Save your two and a half minutes. Thank you, Your Honor. That's fine. Good morning. May it please the Court. John Hope for the Attorney General. Yes. Substantial evidence relating to Petitioner's actions and words establish her aiding, abetting, colluding with others. What is the standard? What's the standard? Reason to believe. Reason to believe. Meaning what? Meaning probable cause? The statute in 212A2Ci specifically says. I'm trying to ask you, though, what does the case law say about what that means? It's akin to probable cause, akin to probable cause. It's not probable cause, but it's reasonable belief. That's the statutory language. It's not a preponderance of the evidence. Probable cause meaning it's less, meaning it's more, meaning what? I'd say it's less, but it's akin. And our standard of review is reason to believe, a reasonable basis? Your standard of review is substantial evidence. I was talking about this. Although the IJ had a reasonable basis for concluding what was concluded. That's correct. Yes, Your Honor. But, you know, it's really mysterious, though, because if this is the case, why doesn't the DHS do this all the time instead of worrying about convictions? It's much easier than trying to deal with a conviction. You just prove that there was probable cause, you know, to think they did this, even if they didn't do it. That's another possible discretion. They decided to go. No, I understand that, but it's an awfully – it seems mighty strange that we're removing people from the country because they might have done something, whether they did it or not. Well, the Congress wrote the statute and they said reasonable belief, and the immigration judge applied the law as stated in the statute. Well, suppose somebody – suppose there was probable cause to think he did something and then he went to trial and he was acquitted of it. Can you then throw him out of the country? But there was probable cause. I don't know what would – that was not what happened here. Well, logically, the answer has to be yes, if you really believe that this is a tantamount to probable cause. Well, that's a hypothetical question, but here Petitioner was not acquitted. She played guilty and she was convicted in Arizona of knowingly possession of – Well, my understanding of what she was convicted of was knowing that she had these chemicals. That's it. Nothing about – it doesn't seem probative of much of anything, actually, with regard to knowing about the manufacturer, because all it proves that she knew was that the chemicals were there. Not that she knew that anything was being done with them. It's different than the Federal crime. The Federal crime requires that if you have the pseudo-Federal, you have to know that they're going to be used to manufacture methamphetamine. This one does not. District Court Judge Stanley Sporkin in Washington, a U.S. District Court judge, said the key to every case is to find the key. And I submit that your question goes to the key to this case, and that is the Arizona definition of knowingly. And what is it? Knowingly means awareness. Of what? Or belief. Of what? Of the conditions, of the circumstances or conduct that constitute a criminal offense. All right. And the criminal offense is having – so I understand that if I have, you know, a bunch of pseudo-Federal in my house, and I know I do, I can be convicted. I beg your pardon? If I have a bunch of pseudo-Federal or whatever these chemicals are in my house, and I know I have it, I can be convicted. I don't have to know anything about what's being done with them. Well, that's not this case. She just didn't have it in her house. That's not a useful answer. The question is what was the crime that she was convicted of? She was convicted of knowingly possessing precursor drugs to the manufacturer of methamphetamines. But she didn't have to know that there were precursor drugs, and she didn't have to know that they were going to be used for anything, right? Under the Arizona statute, it specifically stated what the precursor drugs were, and she pled guilty to that. True. So if you have a bunch of this chemical, but you don't know that it's a precursor drug, and you don't know that it's going to be used for anything, you can still be guilty. If you don't know, but she pled guilty to knowing, and she had an awareness. But that doesn't get you to that she knowingly colluded in the manufacturing of methamphetamine. I think there are two separate questions. First of all, regarding her guilty plea of knowing possession, that relates to her awareness and belief of the criminal conduct. And then whether or not she was convicted of possessing precursor drugs. But that's not what the reasonable belief is here. The reasonable belief is that she was a reasonable belief of the government that she knowingly aided, abetted, or colluded in. But the I.J. found that she knowingly colluded. Yes. Has she allowed her home to be used for the manufacture of methamphetamine? That's enough, isn't it? It is one of the factors. We don't have to say that it's enough. We agree with Your Honor, Judge Hawkins, that that is a significant factor. And the reason why that's a significant factor is the point you made about the distinction between people that are passengers in the car and drivers of the car. Immigration ---- There is a shred of evidence in this record that she got the methamphetamine that she admitted she was addicted to from any outside source, outside being other than her husband and brother. No. No. Her husband stated that he provided the methamphetamine and she stated also that she got the methamphetamine from her husband. Was she addicted at that time? Was she still on meth at that time? She was. And that's an important point because she stated specifically that her addiction would affect her awareness. And secondly, her addiction, unfortunately, it's an unfortunate circumstance, affects her capacity to understand what she observed. And her observations were really very significant here. What did she observe? She observed a plastic container with a top, with a hole cut in it, with tubing coming out. She found that in a back bedroom. She observed in the bathroom a heat source, whether it was brake fluid or some heat compound. He said she told him to get rid of it. She did tell him to get rid of it. And the judge found her credible as to everything except her knowing what was going on.  Well, that's one of the factors. But there are other things that she saw that she never got rid of. For example, she saw the shrink wrap or blister wrap, antihistamines or allergy drugs. And there was a lot of packaging. And she saw that she used. That goes to the crime for which she was convicted, but it doesn't prove that she knew what was going on. These are other facts that the immigration judge pointed out to. What about, have you reconciled the IJ's crediting of the husband's testimony and its conclusion? When the husband's testimony was that we kept this from her and she didn't know. He said that he felt that the husband was credible. But that's not dispositive. He found specifically that the brother and petitioner were not credible. Fine. But what did the husband say? The husband said that we did this at night when she was sleeping and we made every effort to keep it from her and he had no, and as far as he knew, she didn't know about it. Is that what he said? That's exactly what he said. And that was all credited. But he found him credible in what he presented. But he also found petitioner not credible and the brother not credible in terms of attempting to minimize their culpability. The husband said basically, I wasn't involved. I saw what was going on. No, he sort of said he was involved. He said, you know, we were idiots. We were in this back room. We were fooling around with it all in the shed. But she wasn't involved in that. Early on, he said he was not involved at all. But then the brother got involved. But then he said he was. Yes, that's correct. And that's why he pled guilty. So one of the. He pled guilty to what? He also pled guilty to possession. He pled guilty also to knowingly possessing the precursor drugs to methamphetamine. But the testimony I'm talking about was at the hearing, no? After all that. That's correct. That's correct. And there's nothing in the husband's testimony that belies or contradicts in substance the other facts that show her knowledge and her awareness. For example, another matter that she was aware of, she found in a drawer a container that contained or a package that contained match boxes with the strikes plate removed. Well, that's used in a meth lab. She also specifically said that she noted that her brother asked for a crockpot without a liner, which was very curious to her. And so in light of the things that she saw, it's her words that show her mens rea. She said that she. But she also said it all was meaningless to her because she didn't know anything about manufacturing meth. So ultimately, you have to disbelieve that.  She told the investigating officer that she recognized immediately when she found the apparatus in the back room with a container with a hole in the top and the tube inserted in, that she recognized the possibility that her brother was making methamphetamines. She said that she was suspicious. When she found the trash can full of the blister packs of the allergy pills. Suspicion doesn't make out the crime, right? No. These are other factors. But the words indicate what she was thinking. She found that she was strange and concerned. And then what did she do because she was suspicious, because she was strange, because she recognized the possibility? What she did is she confronted her brother. She confronted him how many times? We know she confronted him at least twice. One time he admitted that he was going to be making methamphetamines when he left the house. He admitted that he was using methamphetamine in her house. She hadn't even had a confrontation with her then boyfriend, but later her husband, where they talked about what should happen, what was going on. She said that she went to her brother and said to stop it. Why do you tell somebody to stop it unless you're aware of what's going on? We'd submit that the most important thing is the guilty plea. The guilty plea establishes her knowing. Well, if she had. Well, the guilty plea seems like the least important thing because it wasn't anything relevant. I beg your pardon? The guilty plea was not pertinent particularly. Because of the way Arizona defines the crime. We would submit that the guilty plea is most significant. And for one word, Your Honor, after her lawyer said specifically what knowing means, awareness or belief of circumstances or conduct constituting a criminal offense, and what that was, possessing precursor drugs, Petitioner said in an Arizona court of law, that's the truth. That's true. What better evidence is there than a judicial admission of culpability? Am I wrong that the crime in Arizona is made? Let's assume that pseudophedrine is one of the chemicals, which I don't know. But whatever the chemical is, if you have it and you know you have it, I know this is pseudophedrine, you don't have to know that it's a precursor chemical. You don't have to know it's being used for anything. That's the crime. Is that right? That's correct. Right. So what does it prove? It proves possession of the precursor drugs. But not that she knew it was a precursor drug. But the immigration judge did not rely on the guilty plea alone, Your Honor. But you just said it was the most important thing, which is why I started it. Well, I said it was the most important thing. Without the guilty plea, I think the case is distinctly different. Without the guilty plea, it's significantly different. But with the guilty plea, we go to the other evidence that Judge Hawkins pointed out to. And I won't even address the circumstances that a reasonable person would see in the home when they entered in. The police officers, when they got the consent search, they immediately walked in and saw a methamphetamine pipe, went back and got a search warrant to come back and brought a crew to evaluate and execute the warrant. I don't want to talk about that. I'd focus on entirely what she says she saw. And what's significant in that regard is, is the immigration judge focused not only on the guilty plea, but her control of the house. She was the sole owner of the house. She had complete control of the house. No room of the house did she not have access or control to. And she even consented to the search of the house. So it's the combination of circumstances, not one thing. But we would submit, Your Honor, that the guilty plea is the most significant because it reflects her mens rea and her actus rea in terms of possession of the drugs. In summary, we submit that the evidence substantially established, she knowingly aided, assisted and abetted her brother in production of methamphetamines or the drug trafficking.  Okay. Thank you, Counsel. Rebuttal. Thank you, Your Honors. Counsel for the Department or for the government still has no answer for Judge Berzon's question of what does this conviction actually prove other than possession of chemicals. And even constructive possession of chemicals is enough. There's no there's no it had to be knowingly. So I think it couldn't be constructive either way. She doesn't know what they were used for afterwards. There's no requirement of that. It's just possession of the chemicals. And what was the chemical by the way? Do you know? No, it could have been any it could have been any one of the litany of chemicals. I suppose there are some chemicals that would be so obviously inappropriate to have there that well, the funny thing is, is there in this case there isn't We have isopropyl alcohol. We have pseudoephedrine. We have brake fluid. I think I'm missing one, but that's the most dangerous thing about meth. We all know this at this point common household goods put together in a dangerous way to make drugs and nobody's arguing that Mr. Sysmalich wasn't trying to do that. He was he was also never successful. No methamphetamine was ever actually recovered at the house. It was not a working lab when the when the when the when the police showed up. So where did she get it? Her husband or at that time her boyfriend, Mr. Pollack obtained it for them. There's no evidence to say where he obtained it, but that he obtained it for them and he had never obtained it from Mr. Sysmalich. So he had a dealer. We can only assume I would be remiss in my duties as an advocate to fail to point out that after this conviction, Ms. King showed 10 years of clean urinalysis testing, 10 years of compliance with probation, 10 years of employment, 10 years of good living before she was arrested by immigration authorities and brought to Eloy. With that, Your Honor, I would ask the court to grant this petition for review and remand the record for a plenary hearing on the respondents application for adjustment of status through her U.S. citizen husband. Thank you, counsel. The matter is submitted.
judges: Hawkins, Paez, Berzon